**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>           Plaintiff,<br><br>   v.<br><br>JOSE LUIS ARMSTRONG,<br><br>           Defendant. | Case No. 18-cr-5108-BAS-1<br><br>**ORDER GRANTING MOTION FOR COMPASSIONATE RELEASE**<br>**(ECF Nos. 35, 40)** |

Mr. Armstrong, initially appearing pro se, filed a Motion for Compassionate Release seeking a modification of his forty-six-month sentence to a time served sentence in light of the risk he faces from COVID-19.  (ECF No. 35.)  Counsel then appeared on Mr. Armstrong's behalf and filed a Supplemental Motion to Reduce Sentence.  (ECF No. 40 ("Motion").)  The Government opposes (ECF No. 42 ("Opposition")), and Mr. Armstrong replies (ECF No. 43).  For the reasons stated below, the Court **GRANTS** the Motion.

**I.     BACKGROUND**

On October 25, 2018, Mr. Armstrong, accompanied by his 17-year-old daughter, drove a car to the United States from Mexico through the San Ysidro Port of Entry. (Presentence Report, ECF No. 23 ("PSR") ¶ 4.)  Agents found 35.14 kilograms of methamphetamine in the spare tire and rear quarter panels. (*Id.*)

After pleading guilty to importing methamphetamine, the Court sentenced Mr. Armstrong to forty-six months in custody. (ECF No. 33.) Mr. Armstrong, who is currently being housed at Terminal Island, has served almost twenty-one months of his sentence. According to counsel, he has eighteen months remaining on his sentence, with credit for good time. (Motion at 4.) Additionally, the Court recommended that Mr. Armstrong participate in the Bureau of Prisons ("BOP")'s RDAP program for substance abuse treatment—anticipating that, if he completed that program, he would have his sentence reduced accordingly. Mr. Armstrong completed four months of the RDAP program before it was shut down because of the COVID-19 virus. (Motion, Exs. E ¶ 12, F.)

Mr. Armstrong, who is fifty-four years old, suffers from high blood pressure and high cholesterol. (PSR ¶ 41.) Additionally, his counsel provides evidence that he also has type 2 diabetes and is obese. (Motion, Ex. L.) On April 27, 2020, Mr. Armstrong tested positive for COVID-19. (Opposition, Exs. F at 43, L at 38.) He was listed as recovered on or about May 10, 2020. (Opposition, Ex. F at 42.) However, Mr. Armstrong has filed a declaration indicating he still has shortness of breath. (Motion, Ex. E ¶ 2.) Additionally, Mr. Armstrong argues he could become re-infected or relapse and would be at high risk if that were to happen. (Motion at 7–8.)

Mr. Armstrong alleges that he submitted a request to the BOP for compassionate release on May 14, 2020. (Motion, Ex. D.) Initially, on May 27, 2020, the Warden responded only to the request for home detention, denying that request. (*Id.*) However, later, on July 16, 2020, the Warden more specifically denied Mr. Armstrong's request for compassionate release. (*Id.*)

## II. ANALYSIS

### A. Exhaustion of Administrative Remedies

A district court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 825-26 (2010). A narrow exception, compassionate release, allows a court to reduce a sentence for "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A)(i).

However, a court may only consider a defendant's motion for compassionate release "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf" or "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id*. In other words, Mr. Armstrong must fully exhaust his administrative remedies from the Warden of the facility where he is being housed before he turns to the Court for relief.

"Requiring inmates to exhaust their administrative remedies before seeking court intervention serves several purposes. First, it protects administrative agency authority by guaranteeing agencies the 'opportunity to correct [their] own mistakes.'" *United States v. Ng Lap Seng*, __ F. Supp. 3d __, 2020 WL 2301202, at *6 (S.D.N.Y. 2020) (quoting *Woodford v. Ngo*, 548 U.S. 81, 89 (2006)). "Second, it promotes efficiency since claims 'generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court.'" *Id*. This Court agrees with the vast majority of courts in this circuit that have found such an exhaustion to be mandatory. *See, e.g.*, *United States v. Stanard*, No. CR 16-320-RSM, 2020 WL 1987072, at *4 (W.D. Wash. Apr. 27, 2020); *United States v. Otero*, No. 17-cr-879-JAH, 2020 WL 1912216, at *3 (S.D. Cal. Apr. 20, 2020); *United States v. Allison*, No. CR 16-5207-RBL, 2020 WL 1904047, at *2 (W.D. Wash. Apr. 17, 2020); *United States v. Fuller*, No. CR 17-0324 JLR, 2020 WL 1847751, at *2 (W.D. Wash. Apr. 13, 2020); *United States .v Aguila,* No. 2:16-0046-TLM, 2020 WL 1812159, at *1 (E.D. Cal. Apr. 9, 2020); *United States v. Carver*, No. 4:19-CR-06044-SMJ, 2020 WL 1604968, at *1 (E.D. Wash. Apr. 1, 2020).

Mr. Armstrong initially maintained that he had exhausted his administrative remedies because he filed a request with the Warden on Mary 14, 2020, which was denied on May 27, 2020. (ECF No. 34.) However, it appears that the Warden's response on May 27, 2020, did not specifically address the request for compassionate release. That request was more specifically addressed on July 16, 2020, when the Warden denied the request. (Motion, Ex. D.)

Section 3582 provides two alternative routes to exhaustion. In the first, a petitioner files a petition, which is acted on by the Warden and the petitioner proceeds to continue to fully exhaust his or her administrative remedies by appealing this refusal from the Warden. In the second, the Warden takes no action, 30 days lapses and, because of the Warden's failure to act, the petitioner may proceed without fully exhausting his or her administrative remedies.

In this case, there is some ambiguity as to whether the Warden acted on the initial compassionate release request within 30 days or not. Additionally, the Government may waive any exhaustion requirement by asking the court to consider the substantive merits of a defendant's motion. *Ng Lap Seng*, at *7. Because it appears 30 days may have lapsed without action from the Warden and because the Government, in its Opposition, waives any exhaustion requirement, the Court finds Mr. Armstrong has exhausted his administrative remedies.

### B. Extraordinary and Compelling Reasons

If the exhaustion requirement is met, a court may modify or reduce the defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. §3553(a)]" if the Court finds, as relevant here, that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* As the movant, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. *United States v. Holden*, No. 3:13-cr-444-BR, 2020 WL 1673440, at *3 (D. Or. April 6, 2020).

Mr. Armstrong argues that "extraordinary and compelling reasons" exist because: (1) he might relapse or get re-infected with COVID-19; and (2) if he does get re-infected, his reaction the next time around could be more severe because of his medical conditions. Counsel provides evidence that inmate Adrian Solarzano, also housed at Terminal Island, where Mr. Armstrong is being housed, was hospitalized and died from COVID-19, after the BOP had shown him recovered from the virus. *See* Press Release, BOP, Inmate Death

at the FCI Terminal Island (May 27, 2020), www.bop.gov/resources/news/pdjs/20200527_press_release_trm.pdf.

First, the Court acknowledges what ought to be obvious by now: COVID-19 is posing a serious threat throughout the United States, but particularly within the BOP system. Although the BOP is doing its best to keep the disease in check, the forced closeness of inmates and staff and the inability to enforce social distancing standards has proven no match for the virus. In fact, Terminal Island, where Mr. Armstrong is being housed, has been particularly hard hit. According to the BOP website, 654 inmates and 22 staff have been infected. BOP, Covid-19 Cases, http://www.bop.gov/coronavirus (last visited July 30, 2020). Ten inmates have died. *Id.*

And the fact that Mr. Armstrong has type-2 diabetes, is obese, and suffers from high blood pressure all increase the risk that any infection could be very serious for him. *See* CDC, Coronavirus Disease 2019 (COVID-19), People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated July 17, 2020) (indicating those with type-2 diabetes and obesity "are at increased risk of severe illness from COVID-19" and that those with high blood pressure "might be at increased risk for severe illness from COVID-19").

However, Mr. Armstrong has had and has supposedly recovered from COVID-19. (Motion, Ex. F at 42-43) (reporting that he had recovered as of May 20, 2020). Courts have split on the issue of whether an individual who has recovered from COVID-19 can still show extraordinary circumstances. In *United States v. Molley*, No. CR15-0254-JCC, 2020 WL 3498482, at *2 (W.D. Wash. June 29, 2020), the Court found "we do not know to what degree or duration persons are protected against reinfection . . . following recovery from COVID." *Id.* (citing CDC, *Clinical Questions About COVID-19: Questions and Answers*, http://www.cdc.gov/coronavirus/2019-ncov/hcp/faq.html (then last updated June 4, 2020). "People could be immune from reinfection entirely, partially, or not at all." *Id.* (citing Paul Kellam & Wendy Barclay, *The Dynamics of Humoral Responses Following SARS-Cov-2 Infection and the Potential for Reinfection*, J. Gen. Virology (May 2020), at

1; Erin Garcia de Jesus, *New Data Suggests People Aren't Getting Reinfected with the Coronavirus,* Science News (May 19, 2020), http://www.sciencenews.org/article/coronavirus-COVID-19-reinfection-immune-response; Apoorva Mandavilli, *You May Have Antibodies After Coronavirus Infection But Not For Long*, N.Y. Times, https://www.nytimes.com/2020/06/18/health/coronavirus-antibodies.html (then last updated June 20, 2020)).  Thus, the court concluded the possibility that a defendant might get re-infected and, the next time around, suffer more severe consequences, was too speculative to warrant relief.  *Id.*

On the other hand, in *United States v. Yellin*, No. 3:15-cr-3181-BTM-1, 2020 WL 3488738, at *3 (S.D. Cal. June 26, 2020), the court concluded, "while Mr. Yellin's medical record states he recovered from COVID-19, the possibility of reinfection persists."  As the court points out in *Yellin*, the medical evidence is still uncertain as to the effect of a recovery on future infection.  Ultimately, the court in *Yellin* concluded: "The Court does not presume to have more information than the experts researching this virus.  Without scientific conclusions as to whether reinfection is possible or how long COVID-19 immunity lasts, the Court must err on the side of caution to avoid potentially lethal consequences for Mr. Yellin."  *Id.*

The Court finds it particularly persuasive that an inmate, being housed at the same facility as Mr. Armstrong, was hospitalized and died after he was pronounced "recovered" by the BOP.  Whatever the reason for that situation, it makes it clear that simply announcing that an inmate has "recovered" does not mean that Mr. Armstrong is completely safe from the virus.  Given the high level of infection at Terminal Island, and Mr. Armstrong's pre-existing conditions, the Court finds he has shown "extraordinary and compelling reasons" for his request for release.

### C. The Section 3553 Factors

Mr. Armstrong has completed 21 months of his 46-month sentence.  With good time credits, his time in custody equates to 25 months.

At the time Mr. Armstrong was sentenced, the Court anticipated that he would have the opportunity to decrease his sentence by successfully completing the RDAP program. He did, in fact, complete four months of the program before it was discontinued because of COVID-19. (Motion, Exs. E, F.) Therefore, he does not have the opportunity to have his sentence reduced.

Furthermore, at the time Mr. Armstrong was sentenced, he did not have a plan for his future. He anticipated moving back to Mexico, and he requested an RRC non-punitive placement until he could get his residence in Mexico approved. (PSR ¶ 69.) Additionally, Mr. Armstrong had no plan for employment upon his release. (PSR ¶ 65.) Now, however, he presents evidence that his brother has put a trailer on a property in Ridgecrest, CA. (Motion, Ex. E ¶10.) Mr. Armstrong plans to move into this trailer on his brother's property, which would enable him to self-quarantine upon release. His brother has offered him a job working as a mechanic at his brother's shop. (*Id.* ¶11.) His brother is aware of his addiction issues and is willing to help Mr. Armstrong seek and complete treatment. (*Id.*) Because RDAP is no longer available, seeking treatment outside the BOP appears to be Mr. Armstrong's best opportunity for rehabilitation. His conditions of supervised release include completing an alcohol or drug abuse program and seeking out mental health treatment. These conditions could help Mr. Armstrong avoid recidivism. It is significant that, despite his drug addiction, Mr. Armstrong had no prior convictions, other than a disturbing the peace misdemeanor suffered more than 30 years ago. (PSR ¶ 26.)

Finally, the Court is aware that defendants committing similar offenses now, in the time of COVID-19, are receiving vastly lower sentencing recommendations, because their time in custody is harsher. Those with pre-existing conditions, like diabetes, are receiving particularly favorable recommendations. Many are receiving sentences around 24 months—the amount of time Mr. Armstrong has already served in custody. Therefore, the Court finds reducing Mr. Armstrong's sentence would also avoid unwarranted disparities between similarly situated defendants.

## III. CONCLUSION

Because of "extraordinary and compelling reasons," the Court **GRANTS** Mr. Armstrong's Motion to Reduce his Sentence. (ECF Nos. 35, 40.) The Court reduces Mr. Armstrong's sentence to a time served sentence. The term and conditions of supervised release remain the same. The Court orders that Mr. Armstrong live with his brother on the Ridgecrest property. If he wishes to live elsewhere, he must report and seek approval for this move from Probation.

**IT IS SO ORDERED.**

DATED: July 30, 2020

Hon. Cynthia Bashant
United States District Judge